# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO P. PIÑA,<br><br>           Plaintiff,<br><br>   v.<br><br>YSUSI, *et al.*,<br><br>           Defendants. | Case No. 1:20-cv-01735-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 10)<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff Pablo P. Piña ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, filed on December 10, 2020, and granted leave to amend. Plaintiff's first amended complaint, filed on April 26, 2021, is currently before the Court for screening. (Doc. 10.)

## I. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at Kern Valley State Prison in Delano, California. The allegations in the complaint occurred at California State Prison at Corcoran, California ("Corcoran"). Plaintiff names the following defendants: (1) Officer B. Ysusi, Correctional Officer, and (2) Lieutenant J. Gonzales.

In claim 1, Plaintiff alleges excessive force by Defendant Ysusi in violation of the Eighth Amendment. In claim 2, Plaintiff alleges retaliation by Defendant Gonzales in violation of the First Amendment. In claim 3, Plaintiff alleges denial of due process.

In January 2017, Plaintiff was approved for group yard activities. That morning, Plaintiff was out on the concrete yard attached to 4A-3L, in the back of the yard talking to inmate Reyes. Plaintiff was facing the yard door and could see the gun rail that overlooked the yard. Plaintiff could see that the yard officer, Defendant Ysusi, was not at his post watching the yard and was not doing his assignment by not watching the inmates in the yard, in violation of security procedures. Plaintiff was aware the officer was out of position because Plaintiff knows the rules since he has been incarcerated for a lengthy amount of time.

Plaintiff saw inmate Sanchez walk across the yard to where Plaintiff and inmate Reyes were standing. Inmate Sanchez punched Plaintiff on the left side of the face and Plaintiff defended himself by fighting back as Sanchez continued his assault. Sanchez is much larger

2

weighing about 280 lbs., while Plaintiff weighs 150 lbs. Plaintiff kept moving away from Sanchez and defended himself. No defendant attempted to stop the fight. Plaintiff saw defendant Ysusi standing at the rail watching the fight. Sanchez was bleeding from the face and mouth and stopped his assault and backed away towards the basketball area. Plaintiff was about 10 feet away from Sanchez and no longer engaged in a fight. The fight was over, with Sanchez staying on the basketball court and he began to lay down. Plaintiff was also attempting to lay down when Defendant Ysusi shot Plaintiff with the launcher in Plaintiff's back. The fight was over, and Sanchez and Plaintiff were not near each other. The video of the yard, which Plaintiff saw during the investigation, shows that defendant Ysusi shot Plaintiff for no reason. The video shows Sanchez throwing the first shot.

On February 17, 2019, Plaintiff was called to the 4A-3L rotunda for his disciplinary hearing. Lieutenant Gonzales conducted the hearing. Plaintiff asked for witnesses and Defendant Gonzales told him that there's no witness and denied Plaintiff's request for Colvino and Ysusi. Plaintiff had signed a request for witnesses and repeated the request to Defendant Gonzales. But Gonzales denied Plaintiff's request. Gonzales played the yard video but still found Plaintiff guilty. Plaintiff asked to dismiss the rule violation report because Sanchez was the aggressor, which is what would have happened in Pelican Bay state prison. Defendant Gonzales denied his request.

Plaintiff told Defendant Gonzales that he was going to file a 602 grievance on the denial of his right to present a defense at his disciplinary hearing. Gonzales said he did not care and grievances there thrown in the trash. Gonzales said he would have the grievance torn up and delivered to Plaintiff in ad-seg. Gonzales brought up the Pelican Bay hunger strikes and said that if that were tried in Corcoran, Corcoran would let Plaintiff die. Gonzales told Plaintiff that is something to remember when Plaintiff thinks of filing paper and if Plaintiff filed paper, he is going to regret it no matter where Plaintiff transfers. Gonzales threatened Plaintiff with retaliation for filing grievances. Plaintiff filed a 602 against Gonzales and right after that, his cell was constantly searched and trashed and papers thrown away and his radio broken. Officer Rios told Plaintiff that Defendant Gonzales was behind the searches and following up on his threats.

3

When Plaintiff first arrived at Corcoran, he was kept on strip cell status for two months. A guard told Plaintiff that new arrivals are kept on this status to show Corcoran does not give a "fuck" and that inmates will get it when the property officer feels like it.

Plaintiff seeks compensatory and punitive damages and declaratory judgment, and that the 115 violation be dismissed.

**III.     Discussion**

**A.  Eighth Amendment Excessive Force Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "... embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See *Farmer*, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." *See id.*

When prison officials stand accused of using excessive force, the core judicial inquiry is " ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. *See Whitley*, 475 U.S.

4

at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. *See Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. *See Hudson*, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321-22.

Liberally construing the allegations in the first amended complaint, Plaintiff states a cognizable claim for excessive force against Defendant Ysusi for shooting Plaintiff after the fight had stopped.

### B. Fourteenth Amendment – Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, inmates do not have any due process right to be free from false disciplinary charges. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (inmates have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," provided that they are "not...deprived of a protected liberty interest without due process of law."); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims."). Accordingly, any assertion by Plaintiff that the charges against him were false, without more, fails to state a cognizable claim.

To the extent Plaintiff is challenging the fairness of the disciplinary proceedings, he also fails to state a claim. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the

prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71. If the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir.1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472, 115. Here, Plaintiff's complaint fails to include any factual allegations to suggest that he was denied any of the *Wolff* procedural requirements relative to the disciplinary hearing. In fact, he was given written notice, at least 24 hours to prepare, and a statement of fact and the video to review. While his witness did not appear, the purpose of the witness was to discuss the video of the fight in the yard, which Plaintiff alleges was played at the hearing. Plaintiff simply deleted allegations from the original complaint that showed he was given adequate due process by having the video played at the hearing, which is what the witnesses would have testified to. Plaintiff has failed to allege that having Defendant Ysusi at the hearing would not be unduly hazardous to institutional safety or correctional goals. An "unjust" result is not a cognizable claim as long as the *Wolff* elements are satisfied.

### C. First Amendment—Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); see also *Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); accord *Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *Silva*, 658 F.3d at 1104; *Brodheim v. Cry*, 584

F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges he was retaliated against for the protected activity for threatening to file a 602 grievance against Defendant Gonzales, who then had his cell trashed. Liberally construing the allegations in the complaint at the pleading stage, Plaintiff states a cognizable claim for retaliation against Defendant Lieutenant J. Gonzales.

**D. Property Rights**

Plaintiff alleges he was held in a strip cell for two months and not given his property. Due Process is satisfied if there is a meaningful postdeprivation remedy available to Plaintiff. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff has an adequate postdeprivation remedy available under California law. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895). To the extent Plaintiff challenges the unauthorized or negligent taking of his personal property in contravention of a statute or regulation authorizing it, California law provides him with an adequate state post-deprivation remedy, and his substantive and procedural due process claims challenging the loss of his property are not cognizable in a § 1983 action. Thus, Plaintiff cannot obtain relief under § 1983 based on his allegation that he was not given his property. Further, Plaintiff fails to allege that either defendant was responsible for his property. Accordingly, Plaintiff fails to state a cognizable claim for relief.

**E. Declaratory Relief**

In addition to monetary damages, Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.*" Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

**F. Injunctive Relief**

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

Plaintiff does not allege Defendants have authority to expunge Plaintiff's RVR from his central file. "[T]he pendency of the present action does not automatically give the Court jurisdiction over all prison officials in general or over the expungement of rule violations from prisoner files at a given institution." *Aubert v. Madruga,* No. 1:13-CV-01659-AWI-EPG (PC), 2016 WL 2866419, at *7-8 (E.D. Cal. May 17, 2016), report and recommendation adopted, 2016 WL 4494478 (E.D. Cal. Aug. 25, 2016) (denying injunctive relief because the court lacks jurisdiction to compel non-party prison officials to expunge rule violations from plaintiff's central file solely based on the pendency of a lawsuit against defendant prison officials in their official capacity where defendants lack authority to expunge plaintiff's rule violations); *see also Ingram v. Rachal*, No. CV 19-5605-DOC (KK), 2019 WL 3781603, at *3 (C.D. Cal. Aug. 12, 2019) (finding the court lacks jurisdiction to compel non-party prison officials to remove the RVR's and Counseling Chrono from Plaintiff's Central File).

Plaintiff's request for injunctive relief in the form of removal of the RVR cannot be granted because there is no ability to grant the requested relief. The Court cannot grant Plaintiff's request for relief to remove the RVR, as the validity is not the subject of this case, and the

Defendants do not have the authority to remove the RVR.

### IV. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's first amended complaint states a cognizable claim for excessive force against Defendant Ysusi for shooting Plaintiff after the fight had stopped and for retaliation against Defendant Lieutenant J. Gonzales, but fails to state any cognizable claim against any other Defendant.

Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff also joins claims in violation of Rules 18 and 20.

For the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's first amended complaint, filed on April 26, 2021 (Doc. 10), for excessive force against Defendant Ysusi for shooting Plaintiff after the fight had stopped in violation of the Eighth Amendment and for retaliation against Defendant Lieutenant J. Gonzales in violation of the First Amendment;
2. Plaintiff's requested remedies of injunctive relief and declaratory relief be dismissed from this case; and
3. All other claims and defendants be dismissed from this action, with prejudice, based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the

///
///
///
///

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 11, 2021**  /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE