**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO P. PIÑA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>YSUSI, *et al.*,<br><br>　　　　　Defendants. | Case No.  1:20-cv-01735-BAM (PC)<br><br>ORDER GRANTING DEFENDANT GONZALES'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br><br>(ECF No. 41) |

**I.     Background**

Plaintiff Pablo P. Piña ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint against Defendant Ysusi for excessive force in violation of the Eighth Amendment and against Defendant J. Gonzales for retaliation in violation of the First Amendment.  All parties have consented to United States Magistrate Judge jurisdiction.  (ECF Nos. 36, 39.)

On April 18, 2022, Defendant Gonzales ("Defendant") filed a motion for summary judgment on the grounds that Plaintiff failed to exhaust available administrative remedies for his claims in this action before filing suit.[1]  (ECF No. 41.)  Plaintiff filed an opposition on July 13, 2022.  (ECF No. 49.)  Defendant filed a reply on July 26, 2022.  (ECF No. 50.)

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 41-11.)

1

The motion for summary judgment is deemed submitted.[2]  Local Rule 230(l).

**II.     Defendant's Motion for Summary Judgment**

   **A.     Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows they failed to exhaust. *Id.*

Defendant must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to Plaintiff to show something in her particular case made the existing and generally available administrative remedies effectively unavailable to her. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of exhaustion remains with Defendant. *Id.* (quotation marks omitted).

///

///

---

[2] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendant carries their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

### III. Discussion

### A. Summary of CDCR's Administrative Review Process

At the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed

3

June 1, 2020) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)).  *See also* Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." *Id.* at § 3084.1(a).

The process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. *Id.* at § 3084.2(a).  In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue.  *Id.* at § 3084.2(a)(3).  If the inmate does not have the requested identifying information about the staff member, they must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member in question.  *Id.*

### B.    Evidentiary Objections

Defendant objects to and moves to strike Plaintiff's declaration and all of the exhibits submitted in support of Plaintiff's opposition brief.  (ECF No. 50-2.)  Plaintiff did not file a response to Defendant's evidentiary objections or motions to strike.  Not every objection will be addressed by the Court individually, as doing so is neither necessary nor is that the practice of this Court in the summary judgment context.  For the sake of clarity and to the extent it is appropriate, Defendant's objections have been addressed in general terms by the Court below.

Defendant contends that Plaintiff's primary declaration submitted in support of his opposition brief, (ECF No. 49, pp. 3–9), is inadmissible hearsay because it is not signed and does not state that it was made "under the penalty of perjury."  Defendant moves to strike the declaration in its entirety.  In the alternative, Defendant moves for an order striking nearly all statements in the declaration as hearsay, lacking relevance, containing conclusory and improper opinion testimony, for improper authentication, lacking foundation, or for improper testimony about the contents of a writing.  (ECF No. 50-2, pp. 1–19.)  Defendants' objections to Plaintiff's

declaration are well taken. The declaration is not signed and does not state that it was made under penalty of perjury.[3] (*See* ECF No. 49, pp. 3–9.) However, the Court finds it unnecessary to strike the declaration, in whole or in part. As the declaration is unsigned, it cannot be used to dispute any facts presented by Defendant Gonzales and the Court has not considered its contents in evaluating Defendant Gonzales's motion for summary judgment. Defendants' motion to strike Plaintiff's declaration is therefore denied.

Defendants next move to strike all of Plaintiff's declarations and exhibits submitted in support of his opposition, inclusive of Exhibits A through I, (ECF No. 49, pp. 19–148). (ECF No. 50-2, pp. 19–23.) Defendants raise a variety of evidentiary objections to each exhibit.

The hearsay objections are overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004). Furthermore, "[i]f the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004). At this stage, the Court did not find the hearsay objections raised by Defendants to be preclusive of the evidence submitted, or that all of the statements objected to were, in fact, hearsay.

Defendants' objections to any of Plaintiff's appeals or other prison records for lack of authentication are overruled. Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011). While the records are subject to authentication under Rule 901(b)(7) in any event, the Court nonetheless notes the absence of any evidence or argument suggesting the existence of a legitimate challenge to the records on authentication grounds. *See Chamberlain v. Les Schwab Tire Center of Cal., Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D. Cal. Dec. 3, 2012) (citing *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d

---

[3] A review of the record in this action, as well as the remainder of Plaintiff's opposition brief, reveals that Plaintiff is aware of the need to sign his submissions as well as the appropriate language to include to indicate that a declaration or other filing is signed under penalty of perjury. (*See, e.g.*, ECF No. 49, pp. 18, 20, 25, 78–80, 82, 85, 87–88, 99, 103, 115.) To the extent Plaintiff has submitted other declarations throughout his exhibits that are signed under penalty of perjury, the Court has considered the contents of those submissions in reaching the conclusions presented herein.

1110, 1120 (E.D. Cal. 2006)) (rejecting "purely procedural" authentication objection).

Defendants' objections based on lack of foundation, as improper opinion testimony, or as being conclusory, are also overruled to the extent they are directed at exhibits based on Plaintiff's (or other witnesses') own knowledge and experiences and signed under penalty of perjury. Defendants may not simply characterize any declaration submitted by Plaintiff as "improper opinion testimony" when Plaintiff has signed such declaration under penalty of perjury. To the extent the declaration itself is comprised of solely conclusory statements, that is not alone a sufficient basis to strike the evidence from the record. The Court further notes that Defendants have not provided any contrary evidence to demonstrate a true dispute as to Plaintiff's expertise in areas of which he claims to have first-hand knowledge.

Further, given the Court's duty to determine whether there exists a genuine dispute as to any material fact, objections to evidence as irrelevant are both unnecessary and unhelpful. *See e.g.*, *Carden v. Chenega Sec. & Protections Servs., LLC*, No. CIV 2:09-1799 WBS CMK, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); *Arias v. McHugh*, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); *Tracchia v. Tilton*, No. CIV S-062919 GEB KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

Finally, Federal Rule of Civil Procedure 56(c)(1) specifically requires that a party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Similarly, pursuant to Local Rule 260(b), a party opposing a motion for summary judgment is required to deny those facts that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." To the extent Plaintiff has identified that a fact is in dispute but fails to cite to particular portions of any supporting evidence or otherwise demonstrate that the evidence relied upon by Defendants is inadmissible, such fact as presented by Defendants will be accepted as undisputed.

6

       **C.**    **Undisputed Material Facts (UMF)**[4]

PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT GONZALES

1. Plaintiff filed his original Complaint alleging an Eighth Amendment excessive force claim against Defendant Correctional Officer Ysusi, and Fourteenth Amendment Due Process and First Amendment retaliation claims against Defendant Correctional Lieutenant Gonzales on December 10, 2020. (ECF No. 1 ("Compl.").)

2. Following the Court's screening, Plaintiff amended his complaint once, and filed his First Amended Complaint ("FAC") on April 26, 2021; Plaintiff's FAC alleges: (1) an Eighth Amendment excessive force claim against Defendant Ysusi; (2) a First Amendment retaliation claim against Defendant Gonzales; and (3) a Fourteenth Amendment Due Process claim against Defendant Gonzales. (ECF No. 10 ("FAC") at 3–4.)[5]

3. On May 11, 2021, the Court screened Plaintiff's FAC and found that Plaintiff alleged sufficient facts to state a potentially cognizable Eighth Amendment excessive force claim against Defendant Ysusi. (ECF No. 12 (Findings and Recommendations Regarding Dismissal of Certain Claims and Defendants) at 4–5; ECF No. 13 (Order Adopting Findings and Recommendations) at 2.)

4. On May 11, 2021, the Court screened Plaintiff's FAC and found that Plaintiff alleged sufficient facts to state a First Amendment retaliation claim against Defendant Gonzales on the allegations that Defendant Gonzales retaliated against Plaintiff by ordering cell searches and causing Plaintiff's cell to be trashed after Plaintiff threatened to file a formal grievance against Defendant Gonzales. (ECF No. 12 at 3–4, 6–7; ECF No. 13 at 2.)

5. On May 11, 2021, the Court screened Plaintiff's FAC and dismissed Plaintiff's Fourteenth Amendment Due Process claim against Defendant Gonzales. (ECF No. 12 at 5–6; ECF

---

[4] *See* Defendant's Statement of Undisputed Facts in Support of Defendant Gonzales's Motion for Partial Summary Judgment (Exhaustion), (ECF No. 41-10); Plaintiff's Statement of Disputed Facts, (ECF No. 49, pp. 10–11); and Defendant's Reply to Plaintiff's Response to Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment, (ECF No. 50-1). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

[5] Unless otherwise indicated, the page number citations refer to the page numbers reflected on the Court's CM/ECF system and not to page numbers assigned by the parties.

7

No. 13 at 2.)

6. Plaintiff alleges that on January 17, 2017, while incarcerated at California State Prison – Corcoran ("Corcoran"), he was involved in a fight initiated by another inmate, Sanchez, and was shot by Defendant Ysusi as Plaintiff was attempting to lay down. (FAC at 7–9.)

7. Plaintiff alleges that on February 17, 2017, Defendant Gonzales presided over a disciplinary hearing to determine whether Plaintiff was guilty of the rules violation for the January 2017 fight with Inmate Sanchez. (*Id.* at 10.)

8. At the February 17, 2017 disciplinary hearing, Plaintiff was found guilty of a rules violation for fighting as a result of the January altercation. (*Id.*)

9. Plaintiff alleges Defendant Gonzales violated Plaintiff's First Amendment rights when Defendant Gonzales retaliated against Plaintiff by purportedly ordering cell searches because Plaintiff expressed his intention to appeal Defendant Gonzales's guilty finding on the Rules Violation Report ("RVR") at the February 17 hearing. (*Id.* at 10–12.)

10. Plaintiff alleges that after he filed his 602-appeal on the RVR, he noticed that his cell was constantly "searched and trashed, papers thrown out" and that his radio was broken. (*Id.* at 12.)

11. Plaintiff further claims that Correctional Officer Rios, who worked in the housing unit where Plaintiff resided, informed Plaintiff that Defendant Gonzales ordered the "cell hit" on Plaintiff's cell. (*Id.*)

12. Plaintiff's FAC does not specify how many cell searches were conducted after the February 17, 2017 disciplinary hearing while he was incarcerated at Corcoran. (*Id.* at 10–12.)

13. Plaintiff claims to have fully exhausted prison administrative remedies, alleging that his 602-appeals were denied at all three levels, although he failed to identify or attach any of those appeals to his FAC. (*Id.* at 2.)

14. Plaintiff was transferred to Kern Valley State Prison ("KVSP") on May 30, 2018. (ECF No. 41-4 ("Majd Decl."), Exs. 1–2.)

///

INMATE APPEALS PROCESS

15. During all times relevant to this action, the California Department of Corrections and Rehabilitation ("CDCR") used a program called the Inmate Appeals Tracking System ("IATS") to electronically log and track inmate administrative appeals through all levels of review. (ECF No. 41-6 ("Mendez Decl.") ¶ 5; ECF No. 41-2 ("Leyva Decl.") ¶ 12.)

16. At all relevant times, CDCR, Corcoran, and KVSP had an administrative process available for inmates to submit appeals. (Mendez Decl. ¶ 2; Leyva Decl. ¶ 3.)

17. With certain exceptions, the appeals process in 2017—the timeframe of Plaintiff's operative complaint—consisted of three levels of appeal: (1) the first formal level of review by the relevant institution's division head; (2) a second-level review before that institution's head (no officer ranking lower than Chief Deputy Warden); and (3) a third-level review, also known as the Director's Level Review, conducted by the Office of Appeals in Sacramento, California. (Mendez Decl. ¶ 2; Leyva Decl. ¶ 4; Majd Decl., Exs. 7 and 8 (Cal. Code Regs, tit. 15 §§ 3084.7, 3084.8 (2017)).)

18. Corcoran and KVSP receive, review, and track all non-medical inmate appeals submitted for first and second-level review concerning events there; accepted first and second-level appeals were assigned a log number in the institution's IATS system. (Mendez Decl. ¶¶ 2–5; Leyva Decl. ¶¶ 3, 9, 12; Majd Decl., Ex. 9 (Cal. Code Regs, tit. 15 § 3084.1 (2017)).)

19. CDCR's Office of Appeals ("OOA") receives, reviews, and maintains inmates' nonmedical appeals accepted at the third and final level of administrative review. (ECF No. 41-8 ("Moseley Decl.") ¶¶ 2, 5.)

20. When OOA receives an appeal, it is assigned a tracking number and entered into OOA's computer tracking system. (*Id.* ¶ 3.)

21. During times relevant to this action, in order to exhaust the prison administrative remedies, CDCR inmates were required to complete a CDCR Form 602, "Inmate/Parolee Appeal" ("Inmate Appeal") and describe the "specific issue under appeal and the relief requested." (Mendez Decl. ¶ 7; Leyva Decl. ¶ 6; Majd Decl., Ex. 10 (Cal. Code Regs, tit.

15 § 3084.2(a)(3) (2017)).)

22. During times relevant to this action, CDCR inmates were limited to grieving one issue or related set of issues per each Inmate Appeal form submitted and were required to list all staff member(s) involved in the issue being grieved and describe their involvement in the issue. (Mendez Decl. ¶ 7; Leyva Decl. ¶ 6; Cal. Code Regs, tit. 15 § 3084.2(a)(3) (2017).)

23. During times relevant to this action, CDCR inmates were required to include in their Inmate Appeal form the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal to assist in the identification of the staff members in the issue subject to the inmate's appeal. (Mendez Decl. ¶ 7; Leyva Decl. ¶ 6; Cal. Code Regs, tit. 15 § 3084.2(a)(3) (2017).)

24. During times relevant to this action, if an inmate did not have the requested identifying information about the staff member(s) involved in the issue under appeal, he or she was required to provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. (Mendez Decl. ¶ 7; Leyva Decl. ¶ 6; Cal. Code Regs, tit. 15 § 3084.2(a)(3) (2017).)

25. During times relevant to this action, CDCR inmates were also required to state all facts known and available to them regarding the issue being appealed at the time of submitting the Inmate Appeal forms. (Mendez Decl. ¶ 7; Cal. Code Regs, tit. 15 § 3084.2(a)(4) (2017).)

26. During times relevant to this action, Inmate Appeals could be rejected or cancelled for the reasons outlined in the California Code of Regulations Title 15, sections 3084.6(b) and (c), including expiration of time limits, allegations that lack factual evidence and specific detail, and exceeding the allowable number of appeals filed in a 14-calendar day period. (Mendez Decl. ¶ 8–9; Majd Decl., Ex. 11 (Cal. Code Regs, tit. 15 § 3084.6(b), (c) (2017)).)

27. During all times relevant to this action, Inmate Appeals could not be exhausted through rejection or cancellation. (Mendez Decl. ¶ 9; Leyva Decl. ¶ 8; Cal. Code Regs, tit. 15 § 3084.1(b) (2017).)

10

PLAINTIFF'S RELEVANT APPEALS

28. Defendants Ysusi and Gonzales's ("Defendants") First Set of Interrogatories to Plaintiff, Interrogatory No. 9, asked Plaintiff to identify each administrative grievance by log number and date that he submitted to CDCR that supports his claims against Defendants. (Majd Decl., Ex. 3 (Defs.' First Set of Interrogs. to Pl., Interrog. No. 9, served on February 7, 2022).)

29. In response to Defendants' Interrogatory No. 9, Plaintiff responded that the "following appeals were filed against Defendants: Log No. COR 17-01105; Log No. COR 17-1689; Log No. 17-2484, Log No. 5-17-02484." (Majd Decl., Ex. 4 (Pl.'s Verified Resps. to Defs.' First Set of Interrogs., Resp. to Interrog. No. 9).)

30. Defendants' First Set of Requests for Production of Documents to Plaintiff, Request for Production No. 3, asks Plaintiff to produce all documents supporting his contention that he complied with his obligation to exhaust administrative remedies prior to filing his lawsuit against Defendants. (Majd Decl., Ex. 5 (Defs.' First Reqs. for Prod. of Docs. to Pl., Req. No. 3, served on February 7, 2022).)

31. In response to Defendants' Request for Production of Documents to Plaintiff, Request for Production No. 3, Plaintiff did not provide any documents and responded that Defendants were in possession of the "602-appeals that are subject of the suit." (Majd Decl., Ex. 6 (Pl.'s Resps. to Defs.' First Set of Reqs. for Prod. of Docs., Resp. to Req. No. 3).)

32. In Plaintiff's Inmate Appeal Log No. CSPC-17-01105 (Appeal Log No. 1704009), Plaintiff claimed that he requested Defendant Ysusi to be present at the February 17, 2017 disciplinary hearing so Plaintiff could ask him questions about the January 18 fight that took place on Yard 4A-3L at Corcoran, but Defendant Gonzales did not call Defendant Ysusi as a witness to the hearing despite requesting Ysusi to appear. (Mendez Decl. ¶ 15, Ex. E.)

33. In Appeal Log No. CSPC-17-01105, Plaintiff claims that he informed Defendant Gonzales that he would be filing a complaint for excessive force against Defendant Ysusi. (*Id.*)

///

34. In Appeal Log No. CSPC-17-01105, Plaintiff requested that the rules violation be dismissed for failure to present the reporting officer Ysusi at the February 17, 2017 disciplinary hearing and that an investigation for use of excessive force against Defendant Ysusi be conducted. (*Id.*)

35. Appeal Log No. CSPC-17-01105 was denied at the first, second, and third levels of review. (*Id.*; Moseley Decl. ¶ 11, Ex. E.)

36. In Appeal Log No. CSPC-17-01689, Plaintiff requested that an investigation be conducted for excessive force against Defendant Ysusi as a result of the January 2017 incident referred to in Appeal Log No. CSPC-17-01105. (Mendez Decl. ¶ 16, Ex. F.)

37. In Appeal Log No. CSPC-17-01689, Plaintiff's request was granted in part, to the extent that an investigation of Plaintiff's allegation of staff misconduct was investigated and a determination was made that Defendant Ysusi did not violate CDCR's use of force policy. (*Id.*)

38. In Appeal Log No. CSPC-17-02484, Plaintiff requested that his grievance regarding excessive force against Defendant Ysusi be allowed to proceed, claiming he filed a 602-appeal on June 13, 2017, to ensure the timeliness of his earlier grievance; however, CSPC responded that Plaintiff's Appeal Log No. 17-02484 was appropriately canceled because it was a duplicate of Log No. 17-01689 and instead of appealing the decision of Log No. 17-01689, Plaintiff improperly submitted a new grievance resulting in the cancellation of Log No. 17-02484; this grievance was therefore rejected. (*Id.* ¶ 19, Ex. I.)

39. Appeal Log No. CSPC 17-02474 and 17-2484 refer to the same appeal. (*Id.*)

40. None of the appeals identified by Plaintiff in response to Defendants' written discovery state a complaint for retaliation against Defendant Gonzales after the February 17, 2017 disciplinary hearing. (*Id.* ¶¶ 15–16, 19, Exs. E, F, I; Mosely Decl. ¶ 11, Ex. E.)

41. A thorough search of inmate appeal was conducted at KVSP from February 17, 2017 to April 26, 2021; the search revealed that Plaintiff did not submit any appeals relating to a retaliation claim against Defendant Gonzales. (Leyva Decl. ¶¶ 14–15.)

///

12

42. A thorough search of Plaintiff's appeals reveal that Plaintiff never submitted a 602-appeal against Defendant Gonzales for retaliation during the relevant time period between February 17, 2017, and April 26, 2021, the date of Plaintiff's operative complaint. (Mendez Decl. ¶¶ 11–30, Exs. A–Q; Leyva Decl. ¶¶ 14–15; Moseley Decl. ¶¶ 7–25, Exs. A–R.)

### D. Parties' Positions

Defendant contends that while Plaintiff claims to have fully exhausted his prison administrative remedies regarding his retaliation claim against Defendant Gonzales through Appeal Log Nos. CSPC17-01105, 17-1689, and 5-17-02484, none of these appeals identify, refer to, or even suggest any allegation that Defendant Gonzales retaliated against Plaintiff. Appeal Log Nos. CSPC 17-1689 and 17-02484 refer to Plaintiff's excessive force claim against Defendant Ysusi in this action, while Appeal Log No. 17-1105 alleges that Plaintiff's rules violation for the physical altercation on the 4A-3L yard on January 18, 2017, should be dismissed because during the disciplinary hearing, Defendant Gonzales did not call the reporting officer as a witness. A detailed review of Plaintiff's appeal history from February 17, 2017 (the date of the disciplinary hearing) to April 26, 2021 (the date of Plaintiff's FAC, the operative complaint), reveal that Plaintiff never submitted any appeals alleging that Defendant Gonzales retaliated against Plaintiff by ordering cell searches or the trashing of Plaintiff's cell after the February 2017 disciplinary hearing. It is therefore undisputed that Plaintiff failed to exhaust his administrative remedies for his First Amendment claim for retaliation against Defendant Gonzales, and Defendant is entitled to judgment as a matter of law for Plaintiff's failure to exhaust.

In opposition, Plaintiff argues that he understands the exhaustion requirements, but that Corcoran had a dysfunctional and biased appeal system at the time Plaintiff was incarcerated there and Corcoran has always had an appeal system which was unavailable and biased towards inmates' rights. Plaintiff sent letters to the Warden and the Secretary of CDCR complaining about conditions, explaining that the appeals system at Corcoran was unavailable, and stating that Plaintiff was denied the ability to seek relief because they either reject the appeal or they cancel them. Plaintiff states that he may not have filed a 602 form through the appeals levels, but he did

file those letters with the high authority of the prison system, which in itself is an exhaustion. Plaintiff argues that as long as the appeals process is operated by prison staff, inmates will never receive the relief they are entitled to. Plaintiff alleges that Defendant Gonzales threatened Plaintiff that he would regret it if he filed any appeals on Defendant Gonzales or his staff, and right after Plaintiff filed the appeal on the 115 hearing is when prison staff trashed Plaintiff's cell. Plaintiff, knowing the history of Corcoran, knew the cell search was a warning, and knowing they've done worse, instead of waiting and wasting time filing a 602 with the unreliable Corcoran appeals office, Plaintiff went directly to the Warden and the Director with his complaints. Plaintiff also argues that when he filed Appeal Log No. 17-1689 on February 25, 2017, he could not fit all of the issues he wanted to complain of because they wouldn't fit on the 602 form, and that is why he did not add the retaliation claims to that appeal, though he did follow it up with a letter to the Warden and the Director. (ECF No. 49, p. 25.) When Appeal Log No. 17-1689 was not fully processed, Plaintiff filed Appeal Log No. 17-2484 in an attempt to add additional claims and defendants, but that appeal was improperly cancelled as duplicative. Plaintiff further contends that he cannot properly respond to Defendant Gonzales's summary judgment motion without first obtaining requested discovery. (*Id.* at 1, 16.)

In reply, Defendants contend that Plaintiff's claim that Defendant cites to incomplete evidence is erroneous, Plaintiff fails to offer any admissible evidence that Corcoran's appeal process was unavailable to him, cancelled appeals do not support Plaintiff's claim that the appeal process was unavailable to him, and Plaintiff's letter to the Warden fails to satisfy the exhaustion requirement. Plaintiff's claim that he failed to exhaust administrative remedies because he feared retaliation by Defendant Gonzales is contradicted by his letter to the Warden and lacks merit in light of his history of filing other grievances. Finally, Plaintiff's request for additional discovery lacks merit.

**E.   Analysis**

　　1.   Plaintiff's Request for Discovery

To the extent Plaintiff argues that he is unable to fully oppose Defendant Gonzales's summary judgment motion due to a lack of discovery, the Court has already addressed these

arguments in full. On June 23, 2022, the Court denied Plaintiff's motion requesting a stay of Defendant Gonzales's motion for summary judgment to complete discovery, finding that "Plaintiff has failed to carry his burden of specifically identifying relevant information—in response to these requests or any others—that would prevent the Court from granting Defendant Gonzales's summary judgment motion." (ECF No. 48, p. 4.) The Court further found that "[a]lthough Plaintiff has identified certain documents that he hopes will establish a pattern of retaliation or threats against inmates who file complaints, Plaintiff has not alleged that he was subjected to such retaliation or threats when attempting to exhaust his administrative remedies in this action with respect to his claims against Defendant Gonzales. In addition, the particular discovery requests at issue are burdensome and overly broad, and their relevance to Plaintiff's opposition is merely speculative." (*Id.* at 7.) Plaintiff was granted an extension of time to submit his opposition to Defendant Gonzales's summary judgment motion, and was reminded that he remained free to file a motion to compel or otherwise attempt to narrow his discovery requests before the September 18, 2022 deadline for the completion of discovery. (*Id.*)

Plaintiff's opposition repeats the same arguments raised in his motion to stay Defendant Gonzales's motion to compel, and Plaintiff did not attempt to file a motion to compel before or after the filing of his opposition to the summary judgment motion. In light of Plaintiff's confirmation that he did not attempt to file a grievance through the standard appeals process against Defendant Gonzales for the retaliation claim at issue in this action, it remains unclear how receipt of the requested discovery (video recording of the incident and disciplinary history of both defendants) would allow Plaintiff to "properly respond" to the summary judgment motion. Thus, Plaintiff's renewed request for further discovery is denied for the reasons stated in the Court's June 23, 2022 order. (ECF No. 48.)

    2. <u>CSPC-17-01105</u>

It is undisputed that in Appeal Log No. CSPC-17-01105, Plaintiff claimed that he requested Defendant Ysusi as a witness at Plaintiff's February 17, 2017 disciplinary hearing, but Defendant Gonzales did not call Defendant Ysusi as a witness. UMF 32. Plaintiff also claimed that he informed Defendant Gonzales that he would be filing a complaint for excessive force

15

1  against Defendant Ysusi, and requested that the rules violation be dismissed due to the failure to
2  call Defendant Ysusi as a witness. UMF 33–34. Plaintiff attempts to dispute UMF 32–35 on the
3  basis that while he did include these claims, he could not fit all of his claims, specifically his
4  retaliation claim against Defendant Gonzales, on the appeal form. (ECF No. 49, pp. 10, 25.)
5  Despite the lack of space on the appeal form, Plaintiff states that he followed up his appeal with a
6  letter to the Warden and the Director. (*Id.* at 25.)

7  Plaintiff's declaration submitted with his exhibits, although signed under penalty of
8  perjury, is not supported by the evidence in the record. Plaintiff has failed to provide any
9  evidence, other than his own declaration, to support his allegation that he could not fit all of his
10 claims in the space provided by the appeal form. *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078
11 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary
12 judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as
13 amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any
14 supporting evidence, is insufficient to create a genuine issue of material fact.").

15 In completing "Section A" and "Continuation of CDCR 602, Section A" of CSPC-17-
16 1105, Plaintiff did not use all of the space available to him. Plaintiff explains his issue, regarding
17 his request to call Defendant Ysusi as a witness at his 115 hearing and Defendant Gonzales's
18 failure to do so. Plaintiff then states, "I informed Lt. Gonzales that I would be filing a complaint
19 for excessive use of force against C/O Ysusi for shooting me after the fight was over." (ECF No.
20 41-9, pp. 25, 27.) Plaintiff then left six lines blank, and signed and dated at the bottom of the
21 section. (*Id.* at 27.) In "Section B," Plaintiff requests that the following action be taken: "1) That
22 the 115 be dismissed for failure to present reporting officer at hearing. 2) that an investigation be
23 conducted for use of excessive force by B. Ysusi." (*Id.* at 25.) Plaintiff did not request any
24 further action against Defendant Gonzales with respect to any claims in the approximately half
25 page space provided for him to continue his response to Section B, immediately below the
26 "Continuation of CDCR 602, Section A" portion of the grievance form. (*Id.* at 27.) Plaintiff
27 similarly makes no mention of any retaliation claim against Defendant Gonzales in his response
28 to the Second Level response, again leaving approximately half a page of space blank. (*Id.* at 26,

28.)

Plaintiff provides no explanation for his failure to use the additional space to include or otherwise reference his claim that Defendant Gonzales threatened retaliation in response to Plaintiff's anticipated grievance. Thus, there is nothing in the record to provide support for Plaintiff's declaration, and a self-serving declaration cannot alone create a genuine issue of material fact. *Rivera*, 331 F.3d at 1078.

### 3. Availability of Grievance Process

Plaintiff primarily argues that the grievance process was effectively unavailable to him because the entire appeal systems at Corcoran and KVSP were and are dysfunctional and biased, Defendant Gonzales threatened Plaintiff with retaliation if Plaintiff filed a grievance, and Plaintiff therefore completed the exhaustion requirement on his retaliation claim against Defendant Gonzales by instead sending a letter directly to the Warden. Plaintiff has failed to show a genuine dispute of material fact as to the availability of the grievance process.

#### a. *Biased Appeals System*

Plaintiff attempts to support his assertion that the entire appeals systems at Corcoran and KVSP were flawed and therefore unavailable to him through a variety of letters he purports to have mailed to the Warden and Secretary of CDCR as well as declarations, signed under penalty of perjury, from himself and several other inmates who were housed at Corcoran or KVSP. Defendants challenge the relevance and admissibility of these documents. While the Court declined to strike the evidence based on Defendants' objections, as discussed above, the Court agrees that general statements about issues with an appeals system, or Plaintiff's prior negative experiences with submission of grievances, are not relevant to this question of whether Plaintiff was unable to exhaust his administrative remedies as to his retaliation claim against Defendant Gonzales in this action.

Even assuming the admissibility of such evidence, Plaintiff's assertion that the appeals system as a whole was unavailable to him due to frequent rejections or cancellations of other appeals, and that he had no confidence in the Corcoran Appeals Office, is belied by other evidence in the record. Even after Defendant Gonzales threatened Plaintiff with retaliation for

17

filing grievances against him or any other Corcoran staff—in the form of cell searches or other unspecified adverse action—Plaintiff continued to utilize the grievance system. Plaintiff does not dispute that during the approximately four years between Plaintiff's disciplinary hearing and the filing of Plaintiff's FAC in this action, Plaintiff filed fifteen (15) inmate grievances with Corcoran's Appeals Office. (Mendez Decl. ¶ 12.) Plaintiff states that he attempted to file other appeals, unrelated to his retaliation claim against Defendant Gonzales, that were not included in Defendants' search of Plaintiff's appeal history. (ECF No. 49, p. 13.) Thus, notwithstanding Plaintiff's lack of confidence in the grievance process, Plaintiff continued to file grievances for a variety of complaints, including for his claims against Defendant Ysusi in the instant action.

b.  *Improper Cancellation of CSPC-17-1105*

Plaintiff also argues that because CSPC-17-1105 was not fully appealed, he filed a new appeal requesting that the use of force issue bifurcated as CSPC-17-1689 be processed so that he could appeal the use of force issue and add other staff defendants who were also responsible for the actions of officers for their failure to properly supervise or train staff. (ECF No. 49, p. 11; ECF No. 41-7, p. 46.) However, Plaintiff contends CSPC-17-2484 was improperly cancelled as duplicative of CSPC-17-1689, providing another example of the unavailability of the grievance process.

Even taking as true that CSPC-17-2484 was improperly cancelled, nowhere in that grievance does Plaintiff identify Defendant Gonzales or raise a claim of retaliation. (ECF No. 41-7, pp. 40–50.) Thus, CSPC-17-2484 could not have exhausted Plaintiff's administrative remedies with respect to his retaliation claim against Defendant Gonzales, nor does Plaintiff's conclusory allegation that the grievance was improperly cancelled because he was attempting to raise claims against "the administration, and they could not allow it" provide support for his contention that the appeals process was unavailable.

c.  *Fear of Retaliation*

Plaintiff next argues that Defendant Gonzales's verbal threat "is significant at this stage as it causes a chilling effect and can be just as serious and intimidating as if Defendant assaulted the Plaintiff. Making him think twice about complaining." (ECF No. 49, p. 13.)

18

This argument is again belied by Plaintiff's continued filing of grievances, as well as his argument that what prevented him from exhausting his retaliation claim against Defendant Gonzales was either a lack of space on the original appeal form or the unjustified cancellation of CSPC-17-2484 as duplicative when Plaintiff attempted to add additional claims to his original appeal. While Plaintiff does not specify the date of any retaliatory cell search conducted after his February 17, 2017 disciplinary hearing, Plaintiff claims that it was "right after" he filed the appeal on the disciplinary hearing that staff trashed his cell. (ECF No. 49, p. 17.) CSPC-17-1105 is dated February 25, 2017, and after bypassing the first level of review, was received at the second level on March 1, 2017. (ECF No. 41-7, pp. 2, 19.) Plaintiff then filed grievances received by the Corcoran Appeals Office on March 27, April 3, and May 1, 2017. (ECF No. 41-7, p. 2.) Thus, Plaintiff's claim that his fear of retaliation created a chilling effect is contradicted by the evidence in the record that he repeatedly filed grievances in the weeks and months immediately following Defendant Gonzales's threats and the trashing of Plaintiff's cell.

d.   *Letter to Warden*

Finally, Plaintiff argues that, due the unavailability of the grievance process at Corcoran, he satisfied the exhaustion requirement by writing a letter directly to the Warden of Corcoran and the Secretary of CDCR that included his claim of retaliation against Defendant Gonzales.

As discussed at length above, the Court finds that based on the undisputed evidence in the record, Plaintiff has failed to carry his burden to show that the existing and generally available administrative remedies were effectively unavailable to him. *Williams*, 775 F.3d at 1191. Thus, Plaintiff was required to complete the administrative review process in accordance with the applicable procedural rules of the prison grievance process. *Jones*, 549 U.S. at 201. Plaintiff therefore could not exhaust his claim against Defendant Gonzales by bypassing the normal grievance process and writing a letter directly to the Warden or the Secretary of CDCR.

**IV.   Conclusion and Order**

Based on the foregoing, the Court finds that Plaintiff failed to exhaust his administrative remedies as to his retaliation claim against Defendant Gonzales.

///


Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendant Gonzales's motion for summary judgment for failure to exhaust available administrative remedies, (ECF No. 41), is GRANTED;
2. Plaintiff's claim against Defendant J. Gonzales for retaliation in violation of the First Amendment is DISMISSED, without prejudice, for failure to exhaust administrative remedies;
3. This action proceed only on Plaintiff's first amended complaint against Defendant Ysusi for excessive force in violation of the Eighth Amendment; and
4. The Clerk of the Court is directed to terminate Defendant Gonzales from this case.

IT IS SO ORDERED.

Dated: __April 1, 2025__                    /s/ Barbara A. McAuliffe
                                                                    UNITED STATES MAGISTRATE JUDGE