1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO P. PIÑA,<br><br>           Plaintiff,<br><br>    v.<br><br>YSUSI, *et al.*,<br><br>           Defendants. | Case No.  1:20-cv-01735-BAM (PC)<br><br>ORDER GRANTING DEFENDANT YSUSI'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 58) |

## I.    Introduction

Plaintiff Pablo P. Piña ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint against Defendant Ysusi ("Defendant") for excessive force in violation of the Eighth Amendment.[1]  All parties have consented to United States Magistrate Judge jurisdiction.  (ECF Nos. 36, 39.)

On November 29, 2022, Defendant filed a motion for summary judgment on the grounds that: (1) Defendant did not use excessive force against Plaintiff in violation of the Eighth Amendment; and (2) Defendant is entitled to qualified immunity as to Plaintiff's Eighth

---

[1] On April 1, 2025, Plaintiff's claims against former Defendant Gonzales were dismissed, without prejudice, for failure to exhaust administrative remedies.  (ECF No. 68.)

1

Amendment claim.  (ECF No. 58.)[2]  Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 574 U.S. 968 (2014).  Following an extension of time and denial of Plaintiff's motions to reopen discovery and for appointment of counsel (ECF No. 62), Plaintiff filed an opposition to the motion for summary judgment on February 3, 2023.  (ECF No. 63.)  Defendant filed a reply and a notice of errata on February 16, 2023.  (ECF Nos. 64, 65.)  Defendant lodged Exhibit A to the Declaration of P. Williams, originally intended to be lodged in support of the motion for summary judgment, on April 7, 2025.  (ECF No. 73.)  Defendant's motion for summary judgment is now fully briefed.[3]  Local Rule 230(l).

For the reasons set forth below, the Court orders that Defendant's motion for summary judgment be granted.

## II.    Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty*

---

[2] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 58-9.)

[3] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

*Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted).  "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard.  *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these conclusions, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

III.    **Discussion**

      A.    **Plaintiff's Discovery Requests**

To the extent Plaintiff argues that he was unable to properly oppose Defendant's motion for summary judgment because Defendants refused to turn over discovery necessary for Plaintiff's opposition, these arguments were addressed and rejected in the Court's January 17, 2023 order denying Plaintiff's renewed motions to reopen discovery and for appointment of counsel. (ECF No. 62.) Plaintiff does not raise any new arguments to contradict the Court's finding that he failed to demonstrate diligence by filing further discovery requests or a motion to compel between receiving Defendant's amended discovery responses on June 21, 2022, and the close of discovery on September 18, 2022. Plaintiff's argument that he was unable to properly oppose Defendant's motion for summary judgment is belied both by the Court's extension of the deadline for Plaintiff to file his opposition brief and the opposition brief timely filed on February 3, 2023. (ECF Nos. 59, 62, 63.) Accordingly, any such request regarding further discovery for the purpose of opposing Defendant's motion for summary judgment is denied.

      B.    **Evidentiary Objections**

Defendant objects to and moves to strike all or portions of Plaintiff's declarations and exhibits submitted in support of Plaintiff's opposition brief, with the exceptions of Exhibits A, H, L. (ECF No. 64-2.) Plaintiff did not file a response to Defendant's evidentiary objections or motion to strike. Not every objection will be addressed by the Court individually, as doing so is neither necessary nor is that the practice of this Court in the summary judgment context. For the sake of clarity and to the extent it is appropriate, Defendant's objections have been addressed in general terms by the Court below. Based on the below, the Court does not find it necessary or appropriate to strike any portions of the materials submitted in support of Plaintiff's opposition brief. To the extent the materials relate solely to Plaintiff's arguments regarding his legal property and his request to reopen discovery, those materials have not been considered with respect to the merits of Defendant's motion for summary judgment.

The hearsay objections are overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial. *Fonseca v.*

4

1   *Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).  Furthermore, "[i]f the

2   significance of an out-of-court statement lies in the fact that the statement was made and not in

3   the truth of the matter asserted, then the statement is not hearsay."  *Calmat Co. v. U.S. Dep't of*

4   *Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004).  At this stage, the Court did not find the hearsay

5   objections raised by Defendant to be preclusive of the evidence submitted, or that all of the

6   statements objected to were, in fact, hearsay.

7          Defendant's objections based on lack of foundation, as improper opinion testimony, or as

8   being conclusory, are also overruled to the extent they are directed at exhibits based on Plaintiff's

9   (or other witnesses') own knowledge and experiences and signed under penalty of perjury.

10  Defendant may not simply characterize any declaration submitted by Plaintiff as "improper

11  opinion testimony" when Plaintiff has signed such declaration under penalty of perjury.  To the

12  extent the declaration itself is comprised of solely conclusory statements, that is not alone a

13  sufficient basis to strike the evidence from the record.  The Court further notes that Defendant has

14  not provided any contrary evidence to demonstrate a true dispute as to Plaintiff's expertise in

15  areas of which he claims to have first-hand knowledge.

16         Further, given the Court's duty to determine whether there exists a genuine dispute as to

17  any material fact, objections to evidence as irrelevant are both unnecessary and unhelpful.  *See*

18  *e.g.*, *Carden v. Chenega Sec. & Protections Servs., LLC*, No. CIV 2:09-1799 WBS CMK, 2011

19  WL 1807384, at *3 (E.D. Cal. May 10, 2011); *Arias v. McHugh*, No. CIV 2:09-690 WBS GGH,

20  2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); *Tracchia v. Tilton*, No. CIV S-062919 GEB

21  KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); *Burch v. Regents of Univ. of Cal.*,

22  433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

23         Finally, Federal Rule of Civil Procedure 56(c)(1) specifically requires that a party

24  asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts

25  of materials in the record . . . or showing that the materials cited do not establish the absence or

26  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

27  support the fact."  Similarly, pursuant to Local Rule 260(b), a party opposing a motion for

28  summary judgment is required to deny those facts that are disputed, "including with each denial a

citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  To the extent Plaintiff has identified that a fact is in dispute but fails to cite to particular portions of any supporting evidence or otherwise demonstrate that the evidence relied upon by Defendant is inadmissible, such fact as presented by Defendant will be accepted as undisputed.

### C. Video Evidence

Defendant lodged a video of the incident in support of the motion for summary judgment. (ECF No. 73.)  Both parties rely on the video to support their arguments.

The existence of the video does not change the usual rules of summary judgment: in general, the court will draw all reasonable inferences from the video in plaintiff's favor. *Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n. 1 (9th Cir. 2007).  However, if the video "blatantly contradict[s]" a party's account, "so that no reasonable jury could believe it," the court need not credit the contradicted version on summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Williams v. Las Vegas Metro. Police Dep't*, No. 2:13-CV-1340-GMN-NJK, 2016 WL 1169447, at *4 (D. Nev. Mar. 22, 2016) (The existence of the video does not change the usual rules of summary judgment: in general, the court will draw all reasonable inferences from the video in plaintiff's favor.); *see Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The record is viewed in the light most favorable to the nonmovants . . . so long as their version of the facts is not blatantly contradicted by the video evidence.").  The Court will consider the video and will consider the facts in the light most favorable to Plaintiff.

### D. Undisputed Material Facts ("UMF")[4]

1. Plaintiff, Pablo Piña ("Plaintiff"), is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), who was formerly incarcerated at California State Prison Corcoran ("Corcoran").  (ECF No. 10, pp. 6, 7 ("First Am. Compl.").)

---

[4] *See* Statement of Undisputed Material Facts in Support of Defendant B. Ysusi's Motion for Summary Judgment, (ECF No. 58-2); Plaintiff's Statement of Disputed Facts, (ECF No. 63, pp. 8–10); Reply to Plaintiff's Response to Statement of Undisputed Facts in Support of Defendant Ysusi's Motion for Summary Judgment, (ECF No. 64-1); Notice of Errata Regarding Declaration of B. Ysusi [ECF No. 58-3] in Support of Defendant Ysusi's Motion for Summary Judgment, (ECF No. 65).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

2. Defendant Officer B. Ysusi ("Defendant") has been employed with CDCR for approximately twenty (20) years, starting in 2001. (ECF No. 58-3 ("Ysusi Decl.") ¶ 1.)

3. At all relevant times to the First Amended Complaint, Defendant was a Correctional Officer assigned as a Yard Officer at Corcoran. (*Id.* ¶¶ 2–3.)

4. As a part of Defendant's job duties as a yard officer, he was assigned to monitor and oversee the congregation of inmates during their time in the yard to ensure that order and discipline were maintained; in this role, he was responsible for ensuring that inmates were not engaging in disruptive or illegal conduct that could potentially threaten the safety and security of the inmates, staff and the institution. (*Id.* ¶ 2.)

5. In 2017, Defendant was assigned as a yard officer to the 4A-3L Yard at Corcoran. (*Id.*)

6. On January 18, 2017, Defendant was assigned to work as a Yard Officer at Yard 4A-3L at Corcoran. (*Id.* ¶ 3.)

7. On January 18, 2017, at approximately 8:23 a.m., while performing his duties supervising the release of the Exercise Hard Yard No. 2, Defendant observed two inmates fighting, later identified as Plaintiff and Inmate Sanchez. (*Id.* ¶¶ 3–4.)

8. Upon witnessing Plaintiff and Inmate Sanchez fighting, Defendant pressed his personal alarm device, which is a loud repetitive sound that could be heard in the yard and yelled for the inmates to "get down!" (*Id.* ¶ 5.)

9. Inmates at Corcoran are instructed that when the alarm is activated, they must get on the ground into a prone or seated position. (*Id.* ¶ 6.)

10. Upon the alarm and Defendant's order to get down, the inmates in the yard got down into a seated position, but for Plaintiff and Inmate Sanchez, who continued striking each other with closed fists in the upper torso and head area. (*Id.* ¶ 7–8.)

11. Defendant again yelled at Plaintiff and Inmate Sanchez multiple times to "stop fighting" and to "get down" with negative results. (*Id.* ¶ 9.)

12. An order to "get down" is a command for inmates to immediately stop fighting and lay on the ground in either a seated or prone position with their legs crossed and their hands out. (*Id.* ¶ 10.)

13. From a seated or prone position, inmates cannot attack each other or staff and allow responding officers to take charge of a situation quickly and safely. (*Id.*)

14. An inmate who remains standing despite being ordered to "get down" signifies that he is still participating in the incident, and thus a threat of injury to other inmates or staff. (*Id.*)

15. When neither Plaintiff nor Inmate Sanchez complied with Defendant's orders to get down, Defendant transitioned from his mini-14 rifle to his 40MM launcher to a contact ready position and took aim at the upper right thigh (Zone One) of Plaintiff as he was the clearest and closest target available to safely stop of the fight. (*Id.* ¶ 11.)

16. Defendant fired one (1) direct impact sponge round from approximately twenty-five (25) feet away, hitting his intended target, Plaintiff, in the right buttocks to stop the fight. (*Id.* ¶ 12.)

17. As a result of the deployment of the single sponge round, Plaintiff and Inmate Sanchez assumed a kneeling position. (*Id.* ¶ 13.)

18. Responding staff arrived and removed Plaintiff and Inmate Sanchez, one at a time, from the yard and the remainder of the yard time was recalled without further incident. Yard did not resume after the fight. (*Id.* ¶ 14; ECF No. 65 (Notice of Errata Re: Ysusi Decl.).)

19. The mini-14 rifle fires bullets and CDCR policy designates it as a "lethal" use-of-force option available to correctional staff; the launcher is a "less-than-lethal" use-of-force option available to CDCR staff. (Ysusi Decl. ¶ 15.)

20. As a correctional officer with CDCR for over twenty (20) years, Defendant fulfills his training four (4) times per year on how to properly use a 40MM launcher. (*Id.*)

21. The 40MM launcher fires a single XM1006 direct-impact sponge round and must be reloaded after each shot. (*Id.*)

22. The XM1006 direct-impact sponge projectiles contain a foam core surrounded by a plastic coating. (*Id.*)

23. A XM1006 sponge round is considered a "less-than-lethal" force option available to correctional staff and is designed to stop a threat with minimal injury, including breaking up a fight between inmates. (*Id.*)

24. The XM1006 sponge round is designed to be fired directly at the inmate. (*Id.*)

25. Correctional Officers are trained that the effective range for the 40MM launcher firing a XM1006 sponge round is between ten (10) feet to sixty (60) feet. (*Id.*)

26. Defendant has been trained that use-of-force options, such as chemical agents, batons, physical strengths and holds, and less-lethal options such as the 40MM launcher, do not have to be utilized in any particular sequence, and that he should use the force option that he reasonably believes is sufficient to stop a threat. (*Id.* ¶ 16.)

27. In 2017, CDCR identified three different zones on the human body for targeting in case of an emergency when using the 40MM launcher; the "green zone," or Zone One (1), is from the inmate's waist down to the feet; the "yellow zone," or Zone Two (2), is areas with less fatty tissue such as arms, the back and chest, excluding the spine; and (3) the "red zone," or Zone Three (3), would be the head, and spine areas. (*Id.* ¶ 17.)

28. In emergency situations where an officer does not anticipate death or serious injury to an inmate or staff, CDCR trains officers to target the "green zone" or Zone One (1) on an inmate. (*Id.*)

29. Defendant used the 40MM launcher on January 18, 2017 in a good-faith effort to restore discipline in the yard. (*Id.* ¶ 18.)

30. At the time of Plaintiff's fight there were approximately eleven inmates in the yard; fighting between inmates can be an emergency situation for several reasons, including that it poses a risk of injury, perhaps serious or deadly, to the inmates involved; it can expand to involve other inmates in the area, including up to the point of becoming a riot; it can jeopardize the safety of other inmates not involved in the altercation; it disrupts the order of the yard; and it detracts correctional officers from focus on other inmates. (*Id.* ¶ 19.)

31. Defendant had never had any interactions with Plaintiff or Inmate Sanchez and did not know who Plaintiff was prior to January 18, 2017. (*Id.* ¶ 20.)

32. Defendant did not act out of any ill will or malice towards Plaintiff on the day of the incident. (*Id.* ¶ 21.)

*///*

9

33. An immediate use-of-force was necessary to subdue the fight and gain compliance with a lawful order which was given to both Plaintiff and Inmate Sanchez multiple times.  (*Id.* ¶ 22.)

34. Defendant used the 40MM launcher to stop the ongoing fight in an attempt to gain compliance of both inmates for their safety, the safety of the other inmates and staff and to restore the security of the yard and the prison.  (*Id.*)

35. Other force options presented other potential risks not posed by the 40MM sponge round. For instance, the use of a chemical spray grenade (which disperses a pepper-spray like cloud upon detonation) could have contaminated other, uninvolved inmates, and could not be as accurately deployed to where Plaintiff and Inmate Sanchez were fighting.  (*Id.*)

36. Inmate Sanchez was incarcerated at Corcoran on January 18, 2017.  (ECF No 58-8 ("Sanchez Decl."), p. 1.)

37. On January 28, 2017, Inmate Sanchez believed he had no choice but to fight with Plaintiff, which "in the end was [based on] a misunderstanding."  (*Id.*)

38. During the time Inmate Sanchez and Plaintiff were fighting, Inmate Sanchez heard "guards yell get down, get down" but Plaintiff and Inmate Sanchez continued to fight. (*Id.*)

39. Inmate Sanchez then heard and observed Plaintiff get shot with a "40 millimeter block gun" at which point Inmate Sanchez put his hands down.  (*Id.* at 1–2.)

40. Inmate Sanchez recalled an Officer yell "get down or I'll shoot again" at which point Plaintiff put his hands down and stepped away from Inmate Sanchez and got down on his stomach.  (*Id.* at 2.)

41. The Officers removed Inmate Sanchez from the yard first because he was bleeding from his lip.  (*Id.*)

42. Inmate Sanchez only ceased fighting because Plaintiff got shot.  (*Id.*)

43. Inmate Sanchez recalled Plaintiff was shot while they were fighting.  (*Id.*)

44. As a result of the incident, Inmate Sanchez was transported to an outside medical facility; he sustained a broken nose and also required stitches to his lip as a result of the incident.

1    (*Id.*; ECF No. 58-5 ("Williams Decl.") ¶ 5.)

2    45. As a result of the incident, Plaintiff sustained a bruise to the right buttock area;

3        abrasion/scratch/cut to the left middle finger; bruise to the left cheek and active bleeding

4        to the left elbow, none of which required further care or treatment.  (Williams Decl., ¶¶ 5,

5        6, Ex. B (Medical Report of Injury or Unusual Occurrence, Form 7219).)

6    46. Video footage of the January 18, 2017 incident shows Plaintiff and Inmate Sanchez were

7        in the process of fighting, when Plaintiff was shot with a sponge round.  (Williams Decl.,

8        ¶ 4, Ex. A (Video footage of the January 18, 2017 fight between Inmates Piña and

9        Sanchez, Incident Log No. COR-04A-17-01-0052, at approximately 2:30 in the video

10       recording).)

11       **E.    Parties' Positions**

12           Defendant Ysusi contends that the undisputed evidence shows that Defendant did not act

13   maliciously or sadistically to harm Plaintiff.  The application of force was necessary because

14   Plaintiff refused to comply with lawful orders, the extent of Plaintiff's injuries was minimal, the

15   relationship between the need for a forceful response and the amount of force used were

16   necessary and appropriate, the use of the launcher was appropriate based on the threat reasonably

17   perceived by Defendant, and efforts were made to temper the severity of the forceful response.

18   Defendant acted in good faith to restore order and did not use the launcher maliciously or

19   sadistically for the purpose of causing Plaintiff harm.  Even assuming Plaintiff has established

20   sufficient evidence to support his excessive force claim, Defendant contends that he is qualifiedly

21   immune to this claim.

22           In opposition, Plaintiff argues that Defendant fails to demonstrate that there is no genuine

23   dispute as to any material facts.  The only material evidence relied upon is Defendant's

24   declaration, where Defendant is perjuring himself under oath.  Defendant claims he shot Plaintiff

25   because Plaintiff would not stop fighting, but Plaintiff has seen the video and can swear under

26   oath that he was not fighting when Defendant shot him.  The fight was over and Plaintiff was just

27   standing still; Plaintiff did not refuse to stop fighting, he had already stopped fighting and was not

28   close to Inmate Sanchez.  Plaintiff spoke with a former inmate, Ruel Atwell, who was on the yard

when the fight occurred and can verify that Defendant shot Plaintiff after the fight was over.

Atwell said he is willing to testify to this fact and signed a declaration under penalty of perjury.

The declarations submitted by Defendant from Inmate Sanchez and P. Williams, who was not

present at the time of the incident, are nothing more than smoke screens. Plaintiff also argues that

due to his transfer to a new institution and difficulties obtaining his legal property, he could not

inform the Court or file a discovery request before the September 18, 2022 discovery deadline.[5]

Finally, Defendant is not entitled to qualified immunity because there was no fight to quell when

Defendant shot Plaintiff, using force at a time when none was required.

In reply, Defendant asserts that Plaintiff fails to raise a disputed issue of material fact,

because both Plaintiff's and Mr. Atwell's declarations support Defendant's need for the use of

force, confirming that upon hearing Defendant's order to "get down," Plaintiff did not

immediately get down as he was supposed to. Even assuming Plaintiff subjectively believed the

fight was over and he and Inmate Sanchez were a distance apart, it remains undisputed that the

fight and threat was ongoing from Defendant's perspective because Plaintiff failed to

immediately "get down" in response to Defendant's direct order and remained standing, facing

Inmate Sanchez at the time he was shot. Further, the video supports Defendant's version of

events and Plaintiff's claim that he was denied discovery to oppose summary judgment lacks

merit. Defendant remains entitled to qualified immunity because there is no material dispute that

Defendant did not violate Plaintiff's constitutional rights when he shot Plaintiff, and Plaintiff fails

to provide any case law showing that Defendant's actions were unconstitutional.

### F.    Analysis

The Eighth Amendment protects prisoners from inhumane methods of punishment and

from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual

Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)

(citations omitted). Although prison conditions may be restrictive and harsh, prison officials must

---

[5] These arguments have been addressed and do not provide a basis for denying Defendant's motion for summary judgment, further briefing on the motion, or further discovery. *See supra* Section III.A.; (ECF No. 62).

1    provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.

2    *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

3         For claims of excessive physical force, the issue is "whether force was applied in a good-

4    faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

5    *Hudson*, 503 U.S. at 7.  Relevant factors for this consideration include "the extent of injury . . . [,]

6    the need for application of force, the relationship between that need and the amount of force used,

7    the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the

8    severity of a forceful response.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).

9    Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use

10   of force to cause harm always violates the Eighth Amendment, regardless of whether or not

11   significant injury is evident.  *Hudson*, 503 U.S. at 9–10; *Oliver v. Keller*, 289 F.3d 623, 628 (9th

12   Cir. 2002).

13        Based on the undisputed evidence in the record, Plaintiff has failed to present sufficient

14   evidence to demonstrate a genuine dispute of material fact.  The parties are in agreement that on

15   January 18, 2017, Plaintiff and Inmate Sanchez engaged in a fight on the yard.  UMF 7.  Upon

16   witnessing the fight, Defendant yelled for the inmates on the yard to "get down!"  UMF 8.  An

17   order to "get down" is a command for inmates to immediately stop fighting and lay on the ground

18   in either a seated or prone position with their legs crossed and their hands out.  UMF 12.  After

19   hearing the order to get down, Plaintiff and Inmate Sanchez did not lay on the ground in either a

20   seated or prone position.  UMF 11.  When neither Plaintiff nor Inmate Sanchez complied with

21   Defendant's order to get down, Defendant aimed his 40MM launcher at Plaintiff's upper right

22   thigh, as Plaintiff was the clearest and closest available target.  UMF 15.  Defendant fired one

23   direct impact sponge round, hitting his intended target, Plaintiff, in the right buttock.  UMF 16.

24   As a result of the deployment of the single sponge round, Plaintiff and Inmate Sanchez assumed a

25   kneeling position.  UMF 17.

26        Plaintiff asserts his disagreement with other portions of Defendant's statement of

27   undisputed material facts.  Specifically, Plaintiff asserts that Defendant was not at his assigned

28   post watching the yard when the fight began, Plaintiff did not hear Defendant press his personal

1    alarm or order the inmates to get down when the fight began, after hearing an order to get down
2    Plaintiff and Inmate Sanchez stopped fighting and moved ten or twenty-five feet apart from each
3    other, and Plaintiff and Inmate Sanchez were no longer fighting when Defendant shot Plaintiff.
4    (ECF No. 63, pp. 8–10, 54.)

5        Even taking Plaintiff's version of events as true and drawing all justifiable inferences in
6    his favor, *Anderson*, 477 U.S. at 255, these inconsistencies are not sufficient to create a dispute as
7    to a "material" fact that may affect the outcome of the case under the applicable law. *Id.* at 248.
8    The Court does not find, and Plaintiff does not argue, that whether Defendant was in his assigned
9    position or immediately pressed his personal alarm and ordered the inmates to get down when he
10   noticed the fight, have any effect on the determination of whether Defendant used excessive force
11   against Plaintiff at or after the fight ended.

12       Further, although Plaintiff asserts that he and Inmate Sanchez stopped fighting after
13   hearing Defendant order them to "stop fighting" and to "get down," Plaintiff does not dispute that
14   an order to "get down" also requires that inmates lay on the ground in a seated or prone position,
15   and that from a seated or prone position inmates cannot attack each other or staff.  UMF 12, 13.
16   Plaintiff's only dispute with the statement that an inmate who remains standing despite being
17   ordered to "get down" signifies that he is still participating in the incident, and thus a threat of
18   injury to other inmates or staff, is that he was ten feet from Inmate Sanchez.  UMF 14.
19   Regardless of the distance between Plaintiff and Inmate Sanchez, the evidence relied upon by
20   Plaintiff demonstrates that Plaintiff remained standing and that he failed to comply with
21   Defendant's order for Plaintiff to get down, signifying that he was still participating in the
22   incident and remained a threat of injury to other inmates and staff.  UMF 14.  Based on these
23   facts, as well as his experience as a correctional officer and training, Defendant asserts that the
24   immediate use of force was necessary to subdue the fight and gain compliance with a lawful order
25   which was given to Plaintiff and Inmate Sanchez multiple times, for their safety, the safety of the
26   other inmates and staff, and to restore the security of the yard and the prison.  UMF 20, 26, 33,
27   34.
28   ///

Plaintiff has not presented any affirmative evidence from which a jury could find that the force used by Defendant was applied maliciously or sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 7. Based only on his contention that he and Inmate Sanchez had already stopped fighting and separated from each other before Plaintiff was shot by Defendant, Plaintiff baldly asserts that Defendant's use of force was unnecessary and therefore Defendant did not apply good faith effort. (ECF No. 63, pp. 8–10.) In support of these supposed disputes of fact, Plaintiff cites only to his own declaration and the declaration of former inmate Atwell. (*Id.* at 54, 58.) These declarations, however, are unsupported by any other evidence in the record, are contradicted by the video footage, and are therefore insufficient to create a dispute of material fact. *Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

To the extent Plaintiff also argues that the declaration of Inmate Sanchez should be disregarded as merely a "smoke screen," an attack on the credibility of Defendant's evidence, without more, is also insufficient to create a dispute of material fact. *See National Union Fire. Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert . . . judgment.").

Finally, both parties rely on the video footage of the January 18, 2017 incident in support of their version of events. The Court finds that the footage does not provide support for either party's arguments. The footage, which is grainy and does not include audio, appears to show a fight between Inmate Sanchez and Plaintiff lasting approximately 33 seconds, other inmates sitting down along the walls and fence, and Inmate Sanchez and Plaintiff separating from each other before Plaintiff was kneeling/sitting and Sanchez laying down on the ground. However, the poor quality of the video makes it impossible to determine the time when Plaintiff was shot. Although it is undisputed that Defendant did shoot Plaintiff during the period captured by the

1    video, the Court cannot determine from the video itself whether any inmate depicted was shot at

2    all, much less when the shot occurred.  Notably, while Defendant provides timestamps to indicate

3    other significant events in the footage, no timestamp is provided for when Defendant shot

4    Plaintiff.  To the extent both parties argue that the video "speaks for itself," it is silent as to

5    whether Plaintiff was shot before or after Plaintiff and Sanchez were moving apart from each

6    other and Plaintiff had knelt/sat down.  Plaintiff says he was standing when he was shot, but the

7    video is too grainy to confirm.  (ECF No. 63, p. 4.)  Thus, even drawing all reasonable inferences

8    in Plaintiff's favor, the video fails to provide support for either party's version of facts.

9         Nonetheless, even accepting Plaintiff's arguments and witness Atwell statement, what the

10   video does show is that mere seconds passed from when Plaintiff and Sanchez, who were actively

11   engaging in fighting, were then moving apart, to when Plaintiff contends he was shot as he stood.

12   Given this abbreviated time frame in moving apart, the video does not show affirmative evidence

13   from which a jury could find that the force used by Defendant was applied maliciously or

14   sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.

15   Based on the undisputed evidence in the record, Plaintiff has failed to demonstrate a genuine

16   dispute of material fact, and the Court finds that summary judgment for Defendant is appropriate

17   as to Plaintiff's excessive force claim.

18        Defendant also asserts that the Court should grant summary judgment on the basis of

19   qualified immunity.  However, the Court finds that this argument need not be reached, based

20   upon the above determination regarding the undisputed facts in this case.

21   **IV.    Conclusion and Order**

22        For the reasons explained above, the Court finds that Defendant Ysusi is entitled to

23   summary judgment on Plaintiff's claim that Defendant Ysusi used excessive force against

24   Plaintiff in violation of the Eighth Amendment.

25   ///

26   ///

27   ///

28   ///

16

Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendant Ysusi's motion for summary judgment, (ECF No. 58), is GRANTED;

2. Judgment shall be entered in favor of Defendant Ysusi and against Plaintiff; and

3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **June 18, 2025**                    /s/ *Barbara A. McAuliffe*
                                UNITED STATES MAGISTRATE JUDGE